Craig S. Mende
John P. Margiotta
David A. Donahue
Emily Weiss
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
4 Times Square, 17th Floor
New York, New York 10036
Tel:  (212) 813-5900
Fax:  (212) 813-5901
Email: *cmende@fzlz.com*
       *jmargiotta@fzlz.com*
       *ddonahue@fzlz.com*
       *eweiss@fzlz.com*

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID YURMAN ENTERPRISES LLC and DAVID YURMAN IP LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>JOHN DOES 1-31,<br><br>*Defendants*. | Civil Action No.: _____<br><br><br>**COMPLAINT** |

Plaintiffs David Yurman Enterprises LLC and David Yurman IP LLC (together "David

Yurman," "Yurman," or "Plaintiffs"), by their undersigned attorneys, Fross Zelnick Lehrman &

Zissu, P.C., for their Complaint against Defendants John Does 1-31 (together "Defendants"),

allege as follows:

## NATURE OF THE ACTION

1.      David Yurman is a world-famous supplier of luxury jewelry and watches. Yurman sells its high-quality and well-crafted pieces through its website, davidyurman.com (the "Yurman Wesbsite"), and authorized retail stores.

2.      The Defendants, who have no affiliation with Yurman, operate networks of internet websites (the "Counterfeit Websites"), many of which incorporate DAVID YURMAN or DY word marks in the websites' domain names (the "Infringing Domain Names").

3.      The Counterfeit Websites use Yurman's registered DAVID YURMAN and YURMAN trademarks (the "Yurman Marks") in a deliberate attempt to create the false impression that the Counterfeit Websites are authorized Yurman retail websites selling genuine goods, when in fact, they are not.  A chart listing the Defendants' Counterfeit Websites and related Domain Names is attached hereto as **Exhibit 1**.

4.      Upon information and belief, some of the Defendants use the Counterfeit Websites to sell replicas of Yurman's high quality products (the "Counterfeit Products").  Those that do not sell Counterfeit Products deceive customers into turning over personal information, including credit card numbers, to make "purchases" that do not result in the delivery of any goods.

5.      The Defendants identities are concealed in connection with their operation of the Counterfeit Websites and/or sale of the Counterfeit Products.

6.      The Defendants' misuse of the Yurman Marks in connection with the Counterfeit Websites, Infringing Domain Names, and Counterfeit Products has significantly injured Yurman's reputation and goodwill, and has diluted the distinctiveness of the famous Yurman Marks.

7.      Plaintiffs now bring causes of action for trademark counterfeiting, trademark infringement, trademark dilution, and cybersquatting pursuant to Sections 32, 43(a), 43(c), and 43(d) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), (c), and (d); causes of action under Sections 349 and 360-1 of the New York General Business Law; and violations of the New York State common law.

8.      Plaintiffs seek, *inter alia*, *ex parte* relief for a temporary restraining order seizure order, order to disable certain websites, asset restraining order, preliminary and permanent injunctions, statutory damages or, in the alternative, treble damages and profits, prejudgment interest, attorneys' fees and costs, and investigators' fees and costs, pursuant to 15 U.S.C. § 1117, *et seq.* Unless enjoined, the Defendants' conduct will continue to injure both Yurman and the public.

## THE PARTIES

9.      David Yurman Enterprises LLC is a limited liability company duly organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 24 Vestry Street, New York, New York.

10.     David Yurman IP LLC is a limited liability company duly organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 24 Vestry Street, New York, New York.

11.     Upon information and belief, Defendants John Does 1-31 are individuals, a group of individuals, partnership, organization or unincorporated business association whose legal or personal identities and true addresses are currently unknown.  Defendants operate through domain names registered with registrars in the United States and elsewhere, and which, at all relevant times herein, have been associated with the Counterfeit Websites that use the

DAVID YURMAN mark in an effort to deceive consumers both in this District and throughout the United States regarding the authenticity of such websites.  Defendants direct the activities of and profit from the Counterfeit Websites at the Infringing Domain Names and other domain names, as listed in the attached **Exhibit 1**, as well as an unknown number of other domain names not yet identified.

<u>**JURISDICTION & VENUE**</u>

12.     This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331, 1338(a), and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a), and 1338(b).  The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

13.     This Court has personal jurisdiction over the Defendants under Sections 301 and/or 302 of the New York Civil Practice Laws and Rules because, upon information and belief, Defendants continuously and systematically conduct, transact, and solicit business in New York, the Counterfeit Websites are made available to consumers in New York, Defendants offer for sale and sell the Counterfeit Products to consumers in New York, and Defendants have engaged in targeted advertising for the Counterfeit Websites to consumers in New York.

14.     Venue is proper in this district pursuant to Sections 1391(b) of the Judicial Code, 28 U.S.C. § 1391(b), because Defendants are subject to personal jurisdiction in this District, and because a substantial portion of the events at issue have arisen and will arise in this District and Plaintiffs are suffering harm in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A.  Plaintiffs' Valuable Intellectual Property Rights

15.     Yurman is a world-famous designer, manufacturer and supplier of unique and distinctive fine jewelry and luxury watch designs sold under the DAVID YURMAN and DY brand names, which are the subject of numerous federal trademark registrations. Since its inception in 1980, Yurman has set new standards for designing and marketing jewelry, infusing the disciplines of art and fashion into the jewelry design process.  Yurman is well-known by consumers and the trade for the quality of its luxury products, the innovation and uniqueness of its designs, and its technological developments in jewelry design.

16.     In connection with its sale of jewelry and watches, Yurman also has used since 1988 the mark DY, which is an acronym for David Yurman.  Yurman uses the DY mark in a variety of ways including in style names for its products across a wide range of product lines, including but not limited to DY BEL AIRE, DY MADISON CHAIN, and DY SIGNATURE.

17.     Yurman's products are marketed to fashion-conscious consumers and are sold only through the Yurman Website and Yurman-owned and operated boutiques and authorized retailers, consisting of specialty retail stores and high-end department stores.  The Yurman Website is a significant source of Yurman's sales for DAVID YURMAN and DY brand jewelry and watches.  Items ordered from the Yurman Website are shipped to U.S. consumers from New Jersey, never from China.

18.     Shown below is a screenshot of the homepage of the Yurman Website, and attached as **Exhibit 2** are a selection of other pages from the Yurman Website:



As shown above and in Exhibit 2, the Yurman Website prominently features the Yurman Marks and associated logos.  Moreover, the Yurman Website has a distinctive design, which includes an elegant layout, recognizable color scheme and font, and many high-resolution images of DAVID YURMAN and DY brand products.  Yurman devotes considerable resources to maintaining a website that is commensurate with Yurman's reputation for luxury and quality products because the Yurman Website is the only interaction that some consumers have with the brand.

19.     In addition to advertising on the Yurman Website, Yurman also maintains social media accounts on Instagram, Facebook, Pinterest, Twitter, and YouTube, which not only advertise products sold under the Yurman Marks, but also direct consumers to the Yurman Website to purchase Yurman's products.

20.     Plaintiffs are the registrant and/or owner of the following federally registered trademarks for the Yurman Marks, among others:

| U.S. Registration Number | Trademark | Registration Date | International Classes |
|---|---|---|---|
| 1725487 | DAVID YURMAN | Oct. 20, 1992 | 14 |
| 2014167 | DAVID YURMAN | Nov. 05, 1996 | 14 |
| 2460107 | DAVID YURMAN | Jun. 12, 2001 | 35 |
| 3924043 | DY | Feb. 22, 2011 | 14 |

21.      The above-identified federal registrations for the Yurman Marks are in full force and effect, and are incontestable.  Printouts detailing the registration information for the above marks are attached as **Exhibit 3**.

22.      These registrations constitute conclusive evidence of the validity of the Yurman Marks and of Yurman's exclusive right to use the Yurman Marks in commerce. Registration of the Yurman Marks also constitutes constructive notice to Defendants of Yurman's ownership and exclusive rights in the Yurman Marks.

23.      Plaintiffs have used the Yurman Marks on and in connection with the sale and advertising of a wide variety of goods, including earrings, bracelets, engagement rings, watches, necklaces and chains.

24.      Yurman has sold and advertised its goods in inter- and intrastate commerce, including commerce in the State of New York, and in this Judicial District.

25.      By virtue of a long history of use throughout the world and in the United States, as well as Yurman's sales and promotional activities, the Yurman Marks have generated valuable goodwill and reputation and have become inherently distinctive of high quality, authentic David Yurman products.  Moreover, the Yurman Marks have become famous as a result of Yurman's extensive use, sales, and advertising under such marks.

**B.**     **Defendants' Unlawful Use of the Yurman Marks**

26.       Well after Yurman's adoption, use, and federal registration of the Yurman Marks, Defendants, without any authorization or license from Yurman, knowingly and willfully used the Yurman Marks to create, design, and operate networks of Counterfeit Websites that are deliberately designed to resemble the genuine Yurman Website.  The Counterfeit Websites incorporate Yurman's registered trademarks, logos, and copyrighted images and photographs of genuine products in order to deceive customers into thinking that the websites are offering genuine Yurman merchandise.  A representative sample of screenshots of the Counterfeit Websites is attached as **Exhibit 4**.

27.       Defendants have also knowingly and willfully used the Yurman Marks to create, design, and operate counterfeit advertisements, including on Facebook and Instagram (the "Counterfeit Ads"), that direct consumers to the Counterfeit Websites.  A representative sample of screenshots of the Counterfeit Ads is attached as **Exhibit 5**.

28.       On information and belief, Defendants have continued to operate the Counterfeit Websites and Counterfeit Ads with the knowledge that they are in fact counterfeit, demonstrating that their infringement of the Yurman Marks is willful.

29.       Defendants' use of the Yurman Marks on the Counterfeit Websites and Counterfeit Ads is likely to cause and has caused confusion, mistake and deception by and among consumers and is irrevocably harming Plaintiffs.

30.       Further, on information and belief, some of the Defendants knowingly and willfully use the Counterfeit Websites to sell Counterfeit Products.  The Counterfeit Products are not genuine Yurman products.  Yurman did not manufacture, inspect or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution.

31.     On information and belief, some of the Defendants have sold and/or shipped Counterfeit Products into this State, including to consumers in this District.

32.     Defendants have continued to import, distribute, supply, promote, and/or sell Counterfeit Products with knowledge that the merchandise is in fact counterfeit. Through these acts, Defendants have demonstrated that their infringement of the Yurman Marks is willful.

33.     Defendants' use of the Yurman Marks in connection with the advertising, marketing, distribution, offering for sale and/or sale of the Counterfeit Products is likely to cause and has caused confusion, mistake and deception by and among consumers and is irrevocably harming Plaintiffs.

34.     Moreover, Defendants John Does 1-3, 5, 13-15, 18-24, and 29-31 have registered and are using a number of Infringing Domain Names containing the Yurman Marks.

35.     The Infringing Domain Names registered by Defendants John Does 1-3, 5, 13-15, 18-24, and 29-31 are identical and/or confusingly similar to one or more of the Yurman Marks.

36.     On information and belief, Defendants John Does 1-3, 5, 13-15, 18-24, and 29-31 are using the Infringing Domain Names for nefarious purposes, including the collection of personal information and credit card numbers to perpetrate an identity theft scheme.

37.     On information and belief, Defendants have registered and are using the Infringing Domain Names with the bad-faith intent to profit from the Yurman Marks by confusing consumers into believing that the Counterfeit Websites are selling authentic Yurman merchandise when they are not.

**FIRST CLAIM FOR RELIEF**
**(Against All Defendants)**
**FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT**
**(15 U.S.C. § 1114)**

38.     Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

39.     Defendants have willfully used numerous designations that are counterfeits of the registered Yurman Marks on goods and services for which Plaintiffs hold federal trademark registrations.

40.     Yurman has not authorized the Defendants' use of any of the Yurman Marks on the Counterfeit Websites or to advertise, offer for sale, sell and/or distribute Defendants' Counterfeit Products.

41.     The Defendants' unauthorized use of the Yurman Marks on or in connection with the advertising and sale of goods constitutes the use of the Plaintiffs registered marks in commerce.

42.     The Defendants' unauthorized use of the Yurman Marks is likely to cause confusion, mistake, or deception; cause the public to believe that Defendants' services and/or products are authorized, sponsored or approved by Yurman when they are not; and result in the Defendants unfairly and illegally benefitting from Yurman's goodwill.

43.     Accordingly, the Defendants have engaged in trademark counterfeiting and trademark infringement in violation of Sections 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (b).

44.     Defendants' acts have caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

45.     The Defendants' egregious conduct in operating Counterfeit Websites bearing the unauthorized Yurman Marks and, on information and belief, repeatedly selling counterfeit merchandise, is willful and intended to reap the benefit of the goodwill of Yurman.

**SECOND CLAIM FOR RELIEF**
**(Against Defendants John Does 1-3, 5, 13-15, 18-24, and 29-31)**
**CYBERSQUATTING UNDER THE ANTICYBERSQUATTING CONSUMER**
**PROTECTION ACT**
**(15 U.S.C. § 1125(d)(1))**

46.     Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

47.     The Infringing Domain Names that Defendants John Does 1-3, 5, 13-15, 18-24, and 29-31 have registered are identical to, and/or confusingly similar to one or more of the Yurman Marks, which were distinctive and/or famous at the time that the Defendants registered each of these domain names.

48.     On information and belief, Defendants John Does 1-3, 5, 13-15, 18-24, and 29-31 have registered and used the Infringing Domain Names with bad-faith intent to profit from the Yurman Marks.

49.     Defendants John Does 1-3, 5, 13-15, 18-24, and 29-31's activities as alleged herein violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1 125(d)(1).

50.     Defendants John Does 1-3, 5, 13-15, 18-24, and 29-31 have not made any *bona fide* noncommercial or fair use of the Yurman Marks.

51.     Defendants John Does 1-3, 5, 13-15, 18-24, and 29-31 intended to divert consumers away from Yurman to sites accessible under the Infringing Domain Names that could harm the goodwill represented by the Yurman Marks for commercial gain, and with the intent to tarnish and disparage the Yurman Marks by creating a likelihood of confusion as to the source,

sponsorship, affiliation, or endorsement of the Infringing Domain Names and the associated

Counterfeit Websites.

52.        Defendants John Does 1-3, 5, 13-15, 18-24, and 29-31's acts have caused, and

unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage,

loss, and injury, for which Plaintiffs have no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**
**(Against All Defendants)**
**UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. § 1125(a))**

53.        Plaintiffs repeat and incorporate herein by reference each of the foregoing

allegations.

54.        The Yurman Marks are distinctive and of incalculable value, and are

associated in the public mind with Yurman and goods and services of the highest quality.

55.        Without Yurman's authorization or license and, upon information and belief,

with knowledge of Yurman's prior rights in the Yurman Marks, Defendants provided counterfeit

services under the Yurman Marks and, on information and belief, manufactured, advertised,

offered for sale, sold, distributed, imported, and/or exported counterfeit products under and/or

bearing the Yurman Marks.

56.        Defendants' conduct is likely to cause confusion, cause mistake, and/or

deceive as to the affiliation, connection, or association between Defendants and Yurman, and/or

as to Yurman's sponsorship or approval of Defendants' goods, services, and/or commercial

activities.

57.        As a result of the foregoing, Defendants have falsely designated the origin of

their products, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

58.     Upon information and belief, Defendants' aforesaid conduct has been undertaken knowingly, willfully, and in bad faith.

59.     Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**(Against All Defendants)**
**FEDERAL TRADEMARK DILUTION**
**(15 .S.C. § 1125(c))**

60.     Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

61.     The Yurman Marks are distinctive, federally registered trademarks.  As a result of Yurman's extensive and exclusive use of the Yurman Marks in connection with its products, the Yurman Marks have become famous and are widely recognized among the consuming public as a designation of source of Yurman's goods and services.  The Yurman Marks became famous long before Defendants' infringing activities commenced.

62.     Defendants' commercial use of marks identical to the Yurman Marks for goods and services that are not manufactured or controlled by, affiliated with, or sponsored by Yurman has diluted and is continuing to dilute the distinctive quality of the Yurman Marks by lessening the capacity of those marks to exclusively identify and distinguish Yurman and its goods and services, and by tarnishing them through association with Defendant's goods and services, which are of poor quality.

63.     Upon information and belief, the foregoing acts were done willfully and deliberately and with an intent to dilute the distinctiveness of the Yurman Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

64.     Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**
**(Against All Defendants)**
**TRADEMARK DILUTION UNDER NEW YORK LAW**
**(N.Y. Gen. Bus. Law § 360-1)**

65.     Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

66.     Yurman is the exclusive owner of the Yurman Marks.

67.     Through prominent, long and continuous use in commerce, including commerce within New York, the Yurman Marks have become, and continue to become, famous and distinctive.

68.      Long after the Yurman Marks became famous, the Defendants, without authorization from Yurman, used unauthorized reproductions, counterfeits, copies and colorable imitations of the Yurman Marks.

69.     The Defendants' unauthorized use of the Yurman Marks dilutes and/or is likely to dilute the distinctive quality of those marks and to lessen the capacity of such marks to identify and distinguish Yurman's goods and services.

70.     The Defendants' unlawful use of the Yurman Marks in connection with inferior goods and/or services is also likely to tarnish those trademarks and cause blurring in the minds of consumers between Yurman and the Defendants, thereby lessening the value of the Yurman Marks as unique identifiers of Yurman's products.

71.     By the acts described above, the Defendants have diluted, and are likely to dilute the distinctiveness of the Yurman Marks, and have caused a likelihood of harm to

Yurman's business reputation in violation of Section 360-1 of the New York General Business Law.

72.      Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**
**(Against All Defendants)**
**UNLAWFUL DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK LAW**
**(New York Gen. Bus. Law § 349 )**

73.      Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

74.      Through their importation, advertisement, distribution, offer to sell and sale of unauthorized products bearing the Yurman Marks, the Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

75.      The Defendants' deceptive acts or practices, as described herein, are materially misleading. Such acts or practices have deceived or have a tendency to deceive a material segment of the public to whom the Defendants have directed their marketing activities, and Yurman has been injured thereby.

76.      By the acts described above, the Defendants have willfully engaged in deceptive acts or practices in the conduct of business and furnishing of services in violation of Section 349 of the New York General Business Law.

77.      Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

**SEVENTH CLAIM FOR RELIEF**
**(Against All Defendants)**
**TRADEMARK INFRINGEMENT UNDER NEW YORK COMMON LAW**

78.     Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

79.     Defendants' aforesaid conduct constitutes common law trademark infringement under the common law of the State of New York.

80.     Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

**EIGHTH CLAIM FOR RELIEF**
**(Against All Defendants)**
**UNFAIR COMPETITION UNDER NEW YORK COMMON LAW**

81.     Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

82.     Defendants' aforesaid conduct constitutes common law unfair competition with Yurman under the common law of the State of New York.

83.     Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs to sustain irreparable damage, loss, and injury, for which Plaintiffs have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for judgement against Defendants as follows:

1.     That Defendants, their officers, agents, servants, employees, attorneys, and all

persons in active concert with them be permanently enjoined and restrained from:

    a.  Using any reproduction, counterfeit, copy, or colorable imitation of the Yurman Marks (as defined herein) for and in connection with any goods or services not authorized by Yurman;

    b.  Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiffs' business reputations or dilute the distinctive quality of the Yurman Marks;

    c.  Using any false description or representation, including words or other symbols tending falsely to describe or represent Defendants' unauthorized goods or services as Plaintiffs', or sponsored by or associated with Plaintiffs, and from offering such goods or services into commerce;

    d.  Manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying, or otherwise disposing of any products or packaging not authorized by Plaintiffs that bear any simulation, reproduction, counterfeit, copy, or colorable imitation of the Yurman Marks;

    e.  Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which is or may be likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, or sold by Defendants are in any manner associated or connected with Plaintiffs, or are sold, manufactured, licensed, sponsored, approved, or authorized by Plaintiffs;

    f.  Secreting, destroying, altering, removing, or otherwise disposing of the Counterfeit Products, or any books or records that contain any information

relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, or displaying of all Counterfeit Products;

g.  Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in this Order, or any subsequent order or final judgment in this action;

h.  Using, linking, transferring, selling, exercising control over, or otherwise owning the Infringing Domain Names, or any other domain name that incorporates, in whole or in part, any of the Yurman Marks, or any domain name that is used in connection with any Counterfeit Website;

i.  Creating, operating, owning, overseeing, or otherwise exercising control over any Counterfeit Websites selling, offering to sell, promoting, advertising, or otherwise depicting any Counterfeit Products;

j.  Creating, operating, owning, overseeing, or otherwise exercising control over any Counterfeit Websites embedding, incorporating, including, or otherwise displaying any of the Yurman Marks, or any of Plaintiffs' promotional and advertising campaign images;

k.  Creating, operating, owning, overseeing, or otherwise exercising control over any Counterfeit Ads embedding, incorporating, including, or otherwise displaying any of the Yurman Marks, or any of Plaintiffs' promotional and advertising campaign images; and

l.      Processing any payments for or otherwise providing any online services related to

the sale of Counterfeit Products.

2.      That Defendants, within thirty (30) days after service of judgment with notice of

entry thereof upon them, be required to file with the Court and serve upon Plaintiffs written

reports under oath setting forth in detail the manner in which Defendants have complied with

Paragraph 1 of this Prayer for Relief, supra.

3.      That Defendants' Counterfeit Websites and/or the corresponding domain names

be disabled by the appropriate domain name registries or registrars, including but not limited to

VeriSign, Inc., NameSilo, GoDaddy, PDR Ltd., and Todaynic.com, Inc.

4.      That domain name registries or registrars, including but not limited to VeriSign,

Inc., NameSilo, GoDaddy, PDR Ltd., and Todaynic.com, Inc., be required to transfer the domain

names associated with Defendants' Counterfeit Websites to a registrar to be appointed by

Plaintiffs to re-register the domain names in Yurman's name and under Yurman's ownership.

5.      That any banks, credit card companies, payment providers, or third party

processors (e.g. PayPal, Amazon Checkout, Moneygram and Western Union) for Defendants,

any of Defendants' operations, Defendants' Counterfeit Websites, Defendants' Infringing

Domain Names or Defendants' Other domain names or any websites located at those domain

names or any other website or commercial operation owned or controlled by Defendants, shall

immediately locate all accounts connected to Defendants and their operations, Counterfeit

Websites, other websites and commercial operations, and that such accounts be temporarily

restrained and enjoined from transferring or disposing of any money or other of Defendants'

assets, not allowing such funds to be transferred or withdrawn.

6.      That Defendants account for and pay over to Plaintiffs profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and, that the amount of damages for infringement of the Yurman Marks be increased by a sum not exceeding three times the amount thereof as provided by law.

7.      In the alternative, that Plaintiffs be awarded statutory damages of $2,000,000 for each and every of the Yurman Marks counterfeited by each Defendant per type of good sold and $100,000 per Infringing Domain Name for Defendants' willful counterfeiting and cybersquatting of the Yurman Marks.

8.      That Plaintiffs be awarded their costs, reasonable attorneys' fees and investigators' fees incurred in this action.

9.      That Plaintiffs be awarded pre-judgment interest on their judgment.

10.     That Plaintiffs be awarded such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       August 14, 2018

Respectfully submitted,

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____
    Craig S. Mende
    John P. Margiotta
    David A. Donahue
    Emily Weiss
4 Times Square, 17th Floor
New York, New York 10036
(212) 813-5900
*cmende@fzlz.com*
*jmargiotta@fzlz.com*
*ddonahue@fzlz.com*
*eweiss@fzlz.com*

*Attorneys for Plaintiffs*